IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

VERLIN ALEXANDER, :
:
Plaintiff, :
:
v. : Civ. Action No. 07-041-JJF
:
GOVERNOR RUTH ANN MINNER :
and ATTORNEY GENERAL CARL :
DANBERG, :
:
Defendants. :

---

Verlin Alexander, Pro se Plaintiff, James T. Vaughn Correctional Center, Smyrna, Delaware.

Marc P. Niedzielski, Esquire, Deputy Attorney General, Delaware Department of Justice. Attorney for Defendants.

---

**MEMORANDUM OPINION**

May 1, 2009
Wilmington, Delaware

**Farnan, District Judge**

Plaintiff Verlin Alexander ("Plaintiff"), an inmate currently incarcerated at the James T. Vaughn Correctional Center ("VCC") filed this lawsuit pursuant to 42 U.S.C. § 1983. Plaintiff proceeds pro se and has been granted leave to proceed in forma pauperis. Presently before the Court are several Motions filed by the parties. (D.I. 16, 17, 24, 25, 28, 32.) For the reasons discussed below, the Court will grant Defendants' Motion For Summary Judgment and will deny Plaintiff's Motions.

## I. BACKGROUND

The following facts are taken from the Complaint and other documents and exhibits submitted by the parties. (D.I. 2, 12, 22, 23.) The Complaint alleges that Plaintiff's constitutional rights were violated by Delaware State officials when they violated the terms of the Uniform Criminal Extradition Law when Plaintiff was extradited from Pennsylvania to Delaware.[1] (D.I. 2.) More specifically, Plaintiff alleges that Delaware officials obtained a December 2005 requisition for his return to Delaware, but did not extradite him until October 2006. (Id.) He alleges violations of his right to due process and equal protection as a

[1]Under Delaware law, Del. Code Ann. tit. 11, §§ 2501 through 2540. Under Pennsylvania law, 42 Pa. Cons. Stat. Ann. §§ 9121 through 9148.

result of constitutional errors during the extradition process.[2] (D.I. 23.) Plaintiff seeks one thousand dollars for each day of his incarceration in Delaware. (Id.)

On December 20, 2005, Plaintiff was either arrested or turned himself in after he became aware of an arrest warrant (his accounts vary) to Philadelphia Police District #15 and held at the Philadelphia, Pennsylvania Detention Center when, on January 23, 2006, he was indicted in Delaware on three counts of rape.[3] (D.I. 18, ex. B1; D.I. 23.) The Delaware Superior Court Criminal Docket indicates that on the day he was indicted, an authorization for extradition was filed, a Rule 9 warrant issued, and a summons was mailed. (Id.) In December 2005, Plaintiff signed a waiver of extradition to Delaware. (D.I. 18, B12 ¶ 5.) The waiver was not provided to the Court. An arraignment on the Delaware criminal proceedings was set for February 3, 2006, but Plaintiff did not appear, and the warrant remained outstanding.[4]

---

[2]In Plaintiff's Motion To Consolidate, he incorrectly refers to this action as a habeas corpus case. (D.I. 24.) It is not. The Complaint was filed pursuant to 42 U.S.C. § 1983 and seeks compensatory damages. It does not seek release from prison.

[3]Plaintiff states he was arrested on Delaware charges (D.I. 18, B12), but Alexander v. Williams, Civ. No. 07-01-JJF, 2008 WL 162789 (D. Del. Jan. 17, 2008), indicates that he was in the custody of Pennsylvania authorities on unrelated charges.

[4]Apparently because he was being held at Pennsylvania Detention Center.

(Id.) Plaintiff was released from the Philadelphia Detention Center on March 20, 2006. (D.I. 18, ex. B27 ¶ 5.)

On October 27, 2006, Plaintiff was arrested at his home in Philadelphia by the U.S. Marshal's Task Force. (D.I. 18, ex. B27 ¶ 6; D.I. 22, ex.; D.I. 23.) Plaintiff contends that the State of Pennsylvania was not informed at any time that the State of Delaware had extradition agents in its jurisdiction to arrest him, and he was never taken in front of a Pennsylvania judicial body to challenge his arrest and extradition. (D.I. 23.) On October 27, 2006, the Rule 9 warrant was returned and bail set. (D.I. 18, ex. B1.) The Superior Court docket states,

> To: NCCPD Rule 9 warrant has been returned in Superior Court; bail has been set. Defendant was remanded to the custody of Capital Police for arrest processing, Capitol Police should: (1) complete the arrest procedure; (2) clear Rule 9 warrant wanted person record; and (3) forward arrest paperwork to investigating agency. Investigating agency should: complete any remaining arrest paperwork and return any "paper" Rule 9 warrant in its custody to the Prothonotary's Office, with arrest information recorded thereon.

(D.I. 18, ex. B1, B2.)

Plaintiff's first trial ended in a hung jury on June 21, 2007. (Id. at B5.) On September 25, 2007, Plaintiff pled nolo contendre to one count of third degree rape.[5] (D.I. 18, ex. A,

---

[5]Plaintiff was sentenced to twenty years imprisonment, suspended after ten years imprisonment for ten years Level IV

B7, B17, B18.) The Delaware Superior Court denied Plaintiff's Motion For Postconviction Relief, said denial affirmed by the Delaware Supreme Court on November 5, 2008. Alexander v. State, No. 337, 2008, 962 A.2d 256, 2008 WL 4809624 (Del. 2008) (table decision). On appeal to the Delaware Supreme Court, Plaintiff argued that the requisite procedures of the Uniform Agreement on Detainers were not utilized in extraditing him from Pennsylvania to Delaware. Alexander, 2008 WL 4809624 at *1. The Supreme Court concluded that the issue was waived as the alleged errors occurred prior to entry of Plaintiff's guilty plea. Id. ("This Court has long held that a voluntary guilty plea constitutes a waiver of any alleged errors of defects occurring prior to the entry of the plea.").

## II. STANDARD OF LAW

Plaintiff and Defendants have moved for summary judgment. (D.I. 28, 32.) The Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

---

supervision, suspended in turn after one year Level IV halfway house for two years Level III supervision. (D.I. 18, ex. A, B19-B22.)

Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).

When determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). The Complaint alleges that Defendants violated the Uniform Criminal Extradition Law ("UCE"), codified in Delaware at Del. Code Ann. tit. 11, §§ 2501 through 2530, and in Pennsylvania at 42 Pa. Cons. Stat. Ann. §§ 9121 through 9148.[6] At times, however, Plaintiff refers to the Uniform Agreement on Detainers ("UAD"), codified in Delaware at Del. Code Ann. tit. 11, §§ 2540 through 2550, and in Pennsylvania at 42 Pa. Cons. Stat. Ann. §§ 9101 through 9108.[7] The Acts are

---

[6]A fugitive threatened with extradition has a federal right to challenge extradition by petitioning for a writ of habeas corpus in the asylum state. Bradley v. Extradition Corp. of Am.,758 F. Supp. 1153, 1157 (W.D. La. 1991), (citing Roberts v. Reilly, 116 U.S. 80, 94 (1885)). Denial of that right gives rise to a cause of action under § 1983. Good v. Allain, 823 F.2d 64, 67 (5th Cir. 1987); Morrison v. Stepanski, 839 F. Supp. 1130, 1136 (M.D. Pa. 1993).

[7]The UAD is a compact adopted by Delaware and Pennsylvania, as well as other states, to encourage the expeditious and orderly disposition of outstanding criminal charges against a person imprisoned in a different jurisdiction. Cooney v. Fulcomer, 886 F.2d 41, 43 (3d Cir. 1989); Chapman v. Guessford, 924 F. Supp. 30, 31 (D. Del. 1996). The UAD sets forth the procedures by which officials in one jurisdiction may file a detainer to compel a person serving a term of imprisonment in another jurisdiction to appear for criminal proceedings. See Cooney, 886 F.2d at 43. By its terms, the UAD only applies to persons "serving a term of imprisonment." Article IV(a); United States v. Dobson, 585 F.2d 55, 58 (3d Cir. 1978); see also United States v. Fulford, 825

separate and distinct, with the most obvious difference being that the UAD is applicable to persons serving a term of imprisonment, while the Extradition Act is not.[8] See United States v. Fulford, 825 F.2d 3, 10-12 (3d Cir. 1987); Wallace v.

---

F.2d 3, 10-12 (3d Cir. 1987). Under the UAD, an inmate serving time in one state may waive extradition in order to temporarily return to another state to resolve charges pending against him. See Del. Code Ann. tit. 11, §§ 2540-2550. Once the inmate signs the detainer form waiving extradition to the requesting state, he may remain in the requesting state for up to 180 days. Chapman v Guessford, 924 F. Supp. 30, 31 (D. Del. 1996) (citation omitted). IAD violations are cognizable under 42 U.S.C. § 1983, Cuyler v. Adams, 449 U.S. 433, 449-50 (1981), but only in certain situations. Rhodes v. Schoen, 574 F.2d 968, 970 (8th Cir. 1978) (requiring merely general compliance with IAD).

[8]"Although the procedure for extraditing a person is not identical under the Detainers Agreement and the Extradition Act, the two acts provide substantially the same protections. The Extradition Act requires that a person to be extradited from Pennsylvania to any other state be taken before a Pennsylvania court of record, where the person must be informed of the demand for his surrender, the crime with which he is charged in the demanding state, and the right 'to demand and procure legal counsel.' The Act does not require that the person be informed of anything prior to being taken before the court. On the other hand, the Detainers Agreement provides that the appropriate court of the demanding state must approve the written request for the prisoner's surrender, and must submit the request to the appropriate Pennsylvania authorities, who are required by the Agreement to notify the prisoner of the source and contents of the detainer and of the prisoner's right to demand a speedy disposition of the charges. An automatic thirty day waiting period then goes into effect, during which time the prisoner may not be surrendered to the demanding state." Commonwealth v. Carter, 478 A.2d 1286, 1294 (Pa. Super. 1984). Id. When a written consent to the transfer is given pursuant to section 9146(a), the transfer follows as a matter of course with no necessity for any further proceedings. 42 Pa. Cons. Stat. Ann. § 9146(b).

Hewitt, 428 F. Supp. 39 n.3 (M.D. Pa. 1976). Plaintiff, it seems, uses UCE and UAD interchangeably even though they are different laws. In reviewing the entire record, while not entirely clear, it appears that the UCE, and not the UAD, is the applicable law.

Plaintiff argues that he is entitled to summary judgment because his right to due process and equal protection were violated when he was apprehended. (D.I. 32.) Plaintiff notes that he was detained and waived extradition, but that the Governor's warrant expired, when after ninety days he was not arrested by the requesting date and, on March 20, 2006, he was released from the custody of the Philadelphia Detention Center.[9] Plaintiff argues that the authorization for extradition was perfected on January 23, 2006, but the Governor's warrant expired when the State of Delaware failed to extradite him. Plaintiff was arrested ten months later on "the expired warrant" and argues that the State of Delaware was required to re-issue a new

---

[9]The use of ninety days implicates the UCE; Prior to extradition to the demanding state, the fugitive shall be held, not to exceed thirty days, with an extension of up to sixty additional days. 42 Pa. Cons. Stat. Ann. §§ 9136, 9138; 11 Del. C. §§ 2515, 2517. See In re Abdullah, NO. 91 M-10-6-1-CA, 1991 WL 1283467, at *1 (Del. Super. Oct 09, 1991) (Under the UCE, a total of ninety days is allowed in which to serve a defendant with the demanding state's requisition papers along with a Delaware Governor's warrant.).

Governor's Warrant before law enforcement officers could lawfully travel to Pennsylvania to arrest him. Plaintiff argues that when the State of Delaware failed to issue a new Governor's warrant, it violated his right to challenge his arrest and extradition. Defendants former Delaware Governor Ruth Ann Minner ("Governor Minner") and former Attorney General of the State of Delaware Carl Danberg ("AG Danberg") move for summary judgment on the grounds that neither of them participated in Plaintiff's extradition. (D.I. 28, 29.)

**A. Personal Involvement/Respondeat Superior**

Defendants argue that Plaintiff states he was arrested by unknown law enforcement individuals, none of whom are identified as Defendants. They further argue that because Plaintiff makes no claim that Defendants participated in Plaintiff's arrest, there can be no liability against them pursuant to § 1983. Defendants further note that Plaintiff's companion case, Alexander v. Trala, Civ. No. 08-156-JJF (D. Del.), similarly makes no claim that Defendants were involved when Plaintiff was arrested.

Plaintiff argues that Governor Minner is completely liable for any actions taken, his arrest, and extradition as she actually participated by signing the warrant. (D.I. 35.) Plaintiff argues that AG Danberg's actual participation in this

matter was in the prosecution of the case.  Plaintiff further argues that by reason of Defendants' positions "everything must be orchestrated through them, with their signatures, and approval, before action is taken."  Finally, he argues, but provides no support, that despite the fact that the warrant expired, Governor Minner gave her permission for the Task Force to cross state lines, arrest, and extradite him.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  As is well established, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'"  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights.  Id.; see Monell v. Department of Social

Services, 436 U.S. 658, 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by Plaintiff. Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, 128 F. App'x 240 (3d. Cir. 2005) (not published).

Plaintiff relies upon bare assertions in his opposition to Defendants' Motion. A party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). It is evident from the allegations in the current case and in the verified Complaint of Civ. No. 08-156-JJF, that neither Governor Minner nor AG Danberg were personally involved in Plaintiff's arrest on October 27, 2006. At most, Governor Minner authorized extradition of Plaintiff on January 23, 2006. There is nothing before the Court, however, indicating that she was involved in events occurring subsequent to that date. As to AG Danberg, nothing indicates that he was personally involved in Plaintiff's arrest. Moreover, the Court docket indicates that

during the criminal case, the State of Delaware was represented
by Donald R. Roberts.  (D.I. 18, B1.)

Finally, it is clear from Plaintiff's opposition to
Defendants' Motion, that Governor Minner and AG Danberg were sued
on the basis of their supervisory positions.[10]  Plaintiff's bare
assertions are that Defendants are liable for the actions of any
individuals involved in his arrest and extradition.  There is no
evidence before the Court that Defendants were aware of
Plaintiff's allegations and remained "deliberately indifferent"
to his plight.  Sample v. Diecks, 885 F.2d at 1118.

For the above reasons, the Court finds that Plaintiff has
not shown a genuine issue for trial.  Therefore, the Court will
grant Defendants' Motion for Summary Judgment and will deny
Plaintiff's Motion for Summary Judgment.

**B.   Prosecutorial Immunity**

"Prosecutorial immunity embodies the 'right not to stand
trial.'"  Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008)
(citations omitted).  "[A] state prosecuting attorney who act[s]
within the scope of his duties in initiating and pursuing a
criminal prosecution" is not amenable to suit under § 1983.

---

[10]AG Danberg is sued due to his former position as the
Attorney General of the State of Delaware.  As will be discussed,
he is immune from suit based upon prosecutorial immunity.

Imbler v. Pachtman, 424 U.S. 409, 410 (1976). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

The "prosecutor bears the "heavy burden" of establishing entitlement to absolute immunity." Odd, 438 F.3d at 207. (citations omitted). To overcome the presumption that Danberg is entitled to absolute immunity rather than qualified immunity, he must show that he was functioning as the state's advocate when performing the action(s) in question. Id. (citations omitted) The Court looks to "the nature of the function performed, not the identity of the actor who performed it." Id. (citations omitted). Under the functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or "quasi-judicial" capacity. Id. (citations omitted). Therefore, absolute immunity "attaches to actions 'intimately associated with the judicial phases of litigation,' but not to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." Id. (citations omitted).

Here, Plaintiff contends alleges that Danberg's participated in this matter "in the prosecution of the case." The prosecution

of a criminal defendant, is clearly an act that required advocacy on the party of Danberg. The Court finds that as a prosecutor, Danberg's role in the UCE procedures at issue clearly falls within the scope of prosecutorial duties in initiating and pursuing a criminal prosecution against Plaintiff. Therefore, the Court will dismiss the claims against Danberg as he is entitled to absolute immunity as to the claims raised against him.[11]

**C. Official Capacity**

Plaintiff raises a claim against former Governor Minner for her alleged role in seeking Plaintiff's extradition. To the extent this claim is raised against Governor Minner in her official capacity, said claim is treated as a claim against the State and is barred by the Eleventh Amendment. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 & n.10 (1989). Inasmuch as Plaintiff seeks monetary damages, the Eleventh Amendment precludes recovery of monetary damages from Governor Minner in her official capacity. Based upon the foregoing, the Court will

---

[11]Pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), the Court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief.

dismiss those claims against Governor Minner on the claims raised against her in her official capacity.[12]

**IV. MISCELLANEOUS MOTIONS**

**A. Motion To Extend Time To Complete Discovery**

The discovery deadline for this case was December 31, 2008. (D.I. 13.) On October 30, 2008, Plaintiff filed a Motion To Extend Time To Conduct Discovery, requesting an additional ninety days from the discovery deadline. (D.I.16.) Defendants did not respond to the Motion. The Court will deny the Motion as moot. It appears that the parties have exchanged discovery requests and no discovery requests are pending.

**B. Request For Counsel**

Plaintiff has filed a Motion For Appointment Of Counsel. (D.I. 17.) Plaintiff requests counsel on the grounds that he is unable to afford counsel, the issues involved in this case are complex, and the allegations, if proved would establish a constitutional violation.

Although a plaintiff does not have a constitutional or statutory right to an attorney in a civil case, a district court may seek legal representation by counsel for a plaintiff who demonstrates "special circumstances indicating the likelihood of

---

[12]Supra, at n.11.

substantial prejudice to [the plaintiff] resulting . . . from [the plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Tabron v. Grace, 6 F.3d 147, 154 (3d Cir. 1993)(citing Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984)). Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (5) the degree to which the case turns on credibility determinations or expert testimony. Montgomery v. Pinchak, 294 F.3d 492, 498-99 (3d Cir. 2002); Tabron, 6 F.3d at 155-56.

After reviewing Plaintiff's Motion, the Court concludes that the case is not factually or legally complex that an attorney to represent Plaintiff is warranted. Plaintiff's filings in this case demonstrate his ability to articulate his claims and represent himself. Finally, as discussed above, the Court will

grant Defendants' Motion For Summary Judgment. Thus, Plaintiff's Motion For Appointment Of Counsel will be denied. (D.I. 17.)

**C. Motion To Consolidate Cases**

Subsequent to filing this case, Plaintiff filed a second case in this Court, Alexander v. Trala, Civ. No. 08-156-JJF, on March 19, 2008, against the law enforcement officers who arrested him in October 2006. On February 11, 2009, Plaintiff filed a Motion To Consolidate this case with Civ. No. 08-156-JJF on the basis that both cases concern the same constitutional violations and Plaintiff finds it confusing to have separate scheduling orders and to use both case numbers. (D.I. 24.) Defendants object to the Motion, noting that this case was filed on January 19, 2007, a Scheduling Order was entered, and by the time Plaintiff filed his Motion To Consolidate, the discovery deadline has expired. Defendants argue that the Motion is untimely and disruptive to the scheduling in this case.

Federal Rule of Civil Procedure 42 provides for consolidation "[w]hen actions involv[e] a common question of law or fact . . . to avoid unnecessary costs or delay." Fed. R. Civ. P. 42(a). Rule 42(a) gives a district court broad powers to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the

administration of justice. In re Lucent Technologies Inc. Securities Litigation, 221 F. Supp. 2d 472, 480 (D.N.J. 2001).

The Court exercises its discretion and declines to consolidate the cases. While the cases involve common questions of law and fact, Plaintiff waited until after the close of discovery to file the Motion To Consolidate. Consolidating the cases at this stage of the litigation is prejudicial to Defendants. Further, as discussed above, the Court will grant Defendants' Motion For Summary Judgment. For the above reasons, the Court will deny the Motion To Consolidate. (D.I. 24.)

**D. Motion To Amend/Correct Complaint**

On February 11, 2009, Plaintiff filed a Motion To Amend the Complaint to add as a defendant Agent Orlando Fletcher. (D.I. 25.) The Motion states that the original Complaint named several unknown named defendants, ATF Agents, U.S. Marshals, FBI Agents, Delaware State Police and Delaware and Parole, and other Officers. Defendants oppose the Motion as untimely noting that by the time the Motion was filed the discovery deadline had passed.

This case names only two defendants: Governor Minner and AG Danberg. There are no unknown agents or officers defendants. In reading the Motion it is apparent that Plaintiff confuses this case with Civ. No. 08-156-JJF which, unlike the present case,

names unknown agents or officers. Therefore, the Court will deny the Motion To Amend. (D.I. 25.)

## V. CONCLUSION

For the above reasons, the Court will grant Defendants' Motion For Summary Judgment and will deny Plaintiff's Motions. (D.I. 16, 17, 24, 25, 28, 32.) An appropriate Order will be entered.